# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-0533V
UNPUBLISHED

| | |
|---|---|
| PATRICIA BULLUCK, | Chief Special Master Corcoran |
| Petitioner, | |
| v. | Filed: April 6, 2023 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Special Processing Unit (SPU); Findings of Fact; Statutory Six Month Severity Requirement; Tetanus, Diphtheria, acellular Pertussis (Tdap) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |
| Respondent. | |

*Nancy Routh Meyers*, Turning Point Litigation, Greensboro, NC, for Petitioner.

*Julia Marter Collison*, U.S. Department of Justice, Washington, DC, for Respondent.

### FINDINGS OF FACT[1]

On December 30, 2020, Patricia Bulluck filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a right shoulder injury related to vaccine administration ("SIRVA"), a defined Table injury, as a direct and proximate result of a vaccine she received on November 4, 2020. Petition at 1, ¶¶ 2, 6, 12.

---

[1] Because this unpublished Fact Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

A fact dispute has arisen between the parties regarding one of the primary entitlement requirements and whether Petitioner can satisfy it based on the record. For the reasons discussed below, I find the Petitioner continued to suffer the residual effects of her alleged SIRVA for more than six months. *See* Section 11(c)(1)(D)(i) (statutory six-month severity requirement).

## I. Relevant Procedural History

During the eight months following the Petition's initiation, Ms. Bulluck filed some of the medical records required under the Vaccine Act. Exhibits 1-6, ECF Nos. 9-10, 12; *see* Section 11(c). On February 3, 2022, the case was activated and assigned to the "Special Processing Unit" (OSM's adjudicatory system for resolution of cases deemed likely to settle). ECF No. 16.

Less than two months later (on March 23, 2022), Petitioner filed updated medical records from her primary care provider ("PCP"). Exhibits 8-9, ECF No. 19. Thereafter, she was allowed the opportunity to provide additional evidence regarding the six-month severity requirement. ECF No. 20.

On August 12, 2022, Petitioner filed a supplemental affidavit and brief regarding severity. Exhibit 10, ECF No. 22; Petitioner's Brief Regarding Six-Month Sequela Requirement ("Brief"), ECF No. 23. On October 25, 2022, Respondent filed his response. Response to Brief ("Opp."), ECF No. 25.

## II. Issue

At issue is whether Petitioner continued to suffer the residual effects of the SIRVA for more than six months. Section 11(c)(1)(D)(i) (statutory six-month severity requirement).

## III. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in

2

the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV.   Finding of Fact

I make this severity finding after a complete review of the record to include all medical records, statements, declarations, briefing, and additional evidence filed. Specifically, I base the findings on the following evidence:

- Prior to receiving the flu vaccine on November 4, 2020, Ms. Bulluck (then 57 years old) suffered from common illnesses and conditions such as sinusitis, back pain, and an issue with her right foot, but no prior right shoulder pain. *See generally,* Exhibit 2. In September 2020, she underwent surgery on her right wrist and hand. *Id.* at 429.

- On November 4, 2020, Petitioner received a tetanus, diphtheria, acellular pertussis ("Tdap") vaccine in her right deltoid during a morning PCP appointment. Exhibit 1 at 2; Exhibit 2 at 427-463 (vaccine mentioned on page 445).

- Later the same day, Petitioner attended her fourth post-surgical occupational therapy visit for her hand. Exhibit 4 at 7. At this visit, Petitioner rated her right thumb pain, described as soreness and throbbing, as two out of ten. *Id.*

- On November 11th, Petitioner attended her fifth right-hand therapy visit, reporting less pain and functional limitation. Exhibit 4 at 25. She also underwent x-rays of her right hand. Exhibit 3 at 14.

- Petitioner first complained of right shoulder pain "for the past week" at her sixth right-hand therapy visit on November 18th. Exhibit 4 at 46. She did not discuss any potential cause of her pain at this time, or otherwise associate it with her vaccination from earlier that month.

4

- On November 30th, Petitioner emailed her PCP, complaining of increasing right shoulder pain since her tetanus shot on November 4th. Exhibit 2 at 465. She added that she was not able to "lift her arm up over [her] head or around [her] back." *Id.* (This is thus the first record in which Petitioner's pain was specifically linked to the vaccination).

- At her next therapy session for her right hand (on December 4, 2020), it was noted that Petitioner presented with "continued shoulder pain." Exhibit 4 at 62.

- On December 21st, Petitioner sought care from her orthopedist for right shoulder pain and limited range of motion ("ROM") which she attributed to the tetanus shot she received on November 4th. Exhibit 3 at 62. Rating her pain level as eight out of ten, she described aching pain and limited ROM. *Id.* Petitioner was diagnosed with adhesive capsulitis, prescribed physical therapy ("PT"), and administered a steroid injection into her glenohumeral joint. *Id.* at 69.

- Approximately one month later – on January 26, 2021, Petitioner began PT for her right shoulder pain and limited ROM. Exhibit 5 at 10. Rating her pain between zero and eight, she stated that the steroid injection she received in December "helped some," but she still had limited ROM. *Id.*

- At her next PT session on February 23rd, Petitioner described her right shoulder pain as sharp, intermittent, and at a severity rating ranging from three to six. Exhibit 5 at 63. Reporting that her condition had improved for a few weeks before being aggravated, she indicated that she "felt like she had more ROM for a little while." *Id.*

- At her third PT session on March 9th, it was noted that Petitioner's symptoms had improved. Exhibit 5 at 89. However, Petitioner reported pain at a level of seven out of ten with movement. *Id.*

- At her fourth PT session on March 23rd, Petitioner reported the same sharp and intermittent pain, this time at a level of five out of ten. Exhibit 5 at 114.

- Petitioner reported the same level of pain - five out of ten - at her fifth and final PT session on April 12th (less than a month before the six-month mark from onset). Exhibit 5 at 140. Stating that her shoulder was doing about the

5

- same without "too many flare ups," she indicated that "[o]verhead reaching causes pain." *Id.*

- On April 19th (now 15 days before the six-month mark), Petitioner returned to the orthopedist for treatment of her right shoulder pain and limited ROM since the tetanus vaccine she received on November 4, 2020. Exhibit 4 at 108. She reported that the injection she received in late December 2020 provided 90 percent relief for a few weeks. *Id.* Upon examination, she again exhibited limitations in ROM as compared to her left shoulder movement. *Id.* at 113. The orthopedist assessed Petitioner as having adhesive capsulitis and subacromial impingement. He recommended ultrasound-guided steroid injections in Petitioner's subacromial and glenohumeral joints followed by a week-long break from PT. Discussing the possibility of surgery, Petitioner was instructed to return for a follow-up appointment in four to six weeks. *Id.* It appears Petitioner proceeded with the steroid injections as post-injection instructions were provided. *Id.* at 118.

- On May 5th, Petitioner returned to her PCP for anxiety linked to the COVID vaccine.[3] Exhibit 8 at 26. Concerned about the vaccine's safety, Ms. Bulluck indicated she "d[id] not even want to get near someone who ha[d] gotten the vaccine." *Id.* Although there is no discussion regarding any ongoing right shoulder pain in this record, chronic right shoulder adhesive capsulitis is included on the Problem List. *Id.* at 21. It appears this entry was added sometime between mid-April and the May 5th appointment date. *See id.* at 21. A similar entry was not included on the Problem List as of March 17, 2021. *Id.* at 16.

- In late June and early July 2021, Petitioner emailed her PCP requesting documentation of her COVID vaccine-related anxiety. Exhibit 8 at 46, 51, 56. It appears she was concerned that she would be fired from her job as a Human Resources representative at Duke School of Medicine. *Id.* at 56; *see,* e.g. Exhibit 2 at 478 (regarding her occupation). Chronic right shoulder adhesive capsulitis continued to be included under current problems. *Id.* at 52.

- On December 9th, Petitioner returned to her PCP for an annual physical. Exhibit 8 at 67. She also complained of muscle spasms for which she has taken medication since at least 2017. *Id.* In this medical record, adhesive

---

[3] COVID vaccines were first administered in the United States in December 2020. *See* https://www.hhs.gov/coronavirus/covid-19-vaccines/index.html (last visited Mar. 30, 2023).

- capsulitis and subacromial impingement are included on a list of active problems (*id.* at 69), and Petitioner reported a current right shoulder pain level of five (*id.* at 67).

- A few weeks later – on December 23rd, Petitioner visited her PCP for colon screening. Exhibit 8 at 95. The same right shoulder conditions were listed as problems. *Id.*

- Less than three months later - on March 10, 2022 - Petitioner visited her PCP, seeking pain medication for her right shoulder pain. Exhibit 9 at 6. She indicated she had tried salon pas which did not help much and would be changing jobs and insurance soon. *Id.* This is the most recent medical record filed.

- In her second affidavit, executed in August 2022, Petitioner indicates that "[a]lthough the steroid injection she received on April 19, 2021 helped, [she] continued to have right shoulder pain and limitations in range of motion." Exhibit 10 at ¶ 7. She maintains that she continued to experience pain and ROM limitations throughout 2021, and discussed these symptoms with providers. *Id.* at ¶¶ 7-8. Petitioner also alleges that her anxiety related to the COVID pandemic were heightened by her negative experience with the tetanus vaccine. *Id.* at ¶ 11.

To satisfy the Vaccine Act's severity requirement in this case, Petitioner must show that she suffered the residual effects of her injury for more than six-months. Section 11(c)(1)(D)(i) (severity requirement for cases not involving death or inpatient hospitalization and surgical intervention). She thus must establish that her symptoms continued beyond at least May 4, 2021 (assuming an onset date of November 4, 2020 – which the record does preponderantly support).

Although she acknowledges that she failed to pursue treatment between her last orthopedic appointment on April 19, 2021 (when she received multiple steroid injections) until March 22, 2022, Petitioner insists that she has provided sufficient evidence to satisfy the six-month severity requirement. Brief at 9. She argues that this gap in treatment "may speak to the severity of her injury and, perhaps, the amount of compensation she may be due – but it has nothing to do with her entitlement to compensation." *Id.* To support her argument, Petitioner cites the addition and continued inclusion of adhesive capsulitis and impingement of the right shoulder on her problems list and her orthopedist's comment that she may require surgery to address her right shoulder condition. *Id.* at 6-9 (citing her affidavit, Exhibit 10 at ¶ 8). Additionally, Petitioner attributes her failure to seek treatment

7

during this eleven-month period to her fear of COVID-19 during the worldwide pandemic. Brief at 9 (citing her affidavit, Exhibit 10 at ¶ 8).

Respondent does not accept this argument. Opp. at 4. He maintains instead that the eight-month gap from April 19th through December 21, 2021, and three-month gap thereafter, "call into question whether [P]etitioner's treatment after April 2021 was related to her alleged vaccine-related injury." *Id.* Noting that Petitioner's initial treatment occurred during the height of the COVID-19 pandemic – from November 2020 through April 2021, Respondent dismisses her rationale for avoiding treatment during the remainder of 2021. *Id.* at 4-5.

The parties have muddled their arguments in this case by conflating Petitioner's fear of the COVID *vaccine* with a fear of the COVID *pandemic*/COVID *illness*. I agree that a fear of the *illness* would not explain Petitioner's pursuit of treatment from November 2020 through April 2021, then lapse in treatment until March 2022.[4] However, given the prevalence of COVID vaccinations (the administration of which peaked in April 2021),[5] a fear of the COVID *vaccine* would coincide with the gap in treatment seen in this case. And the medical records clearly establish that the COVID *vaccine* was the source of Petitioner's fear. Exhibit 8 at 26.

Otherwise, the record preponderantly supports the conclusion that Petitioner's shoulder pain lasted more than six months from onset, despite treatment gaps. The above medical entries show that Petitioner complained of severe right shoulder pain (at a level of eight out of ten) when seeking treatment from her orthopedist on December 21, 2020. Exhibit 3 at 62. When beginning PT approximately one month later, Petitioner reported temporary relief from the glenohumeral joint steroid injection administered on December 21st. Exhibit 5 at 10. Thereafter, she reported pain at a more moderate, but still significant, level – from three to seven out of ten. Exhibit 5 at 63, 89, 114, 140. At her last orthopedic appointment on April 19, 2021 – only two weeks before the requisite six-month date, Petitioner continued to exhibit limited ROM and report right shoulder pain. Exhibit 4 at 108.

Similar to the relief provided by her December 2020 steroid injection, Petitioner likely gained some relief from the steroid injections she received on April 19, 2021. And I

---

[4] COVID deaths in the United States reached an all-time high during the week of January 13, 2021. *See* https://covid.cdc.gov/covid-data-tracker/#trends_weeklydeaths_select_00 (last visited on Apr. 3, 2023).

[5] COVID vaccines were not available until mid-December 2020, and the number of vaccine administrations peaked during mid-April 2021. *See* https://covid.cdc.gov/covid-data-tracker/#vaccination-trends (last visited Apr. 3, 2023).

cannot discern exactly when the entry related to chronic right shoulder adhesive capsulitis which appeared in Petitioner's May 5th medical record was added. *See* Exhibit 8 at 21. However, an additional entry regarding right shoulder impingement appeared in the medical record from Petitioner's PCP visit on December 9th (*id.* at 69), and Petitioner reported right shoulder pain at that visit (*id.* at 67). These entries support Petitioner's claim that any relief obtained from her April 2021 steroid injections was also temporary.

Petitioner's later right shoulder pain appears to have been milder than what she previously experienced. And, despite the *mention* of right shoulder pain in December 2021, Petitioner did not seek treatment for her shoulder condition. The purpose of the visit was instead for an annual physical, and more time was spent discussing muscle spasms Petitioner had experienced since 2017. Exhibit 8 at 67. However, when Petitioner sought treatment again for her left shoulder pain in March 2022, she requested pain medication (Exhibit 9 at 6), although it appears that she has not returned for further treatment since that visit.

In light of the foregoing, there is sufficient evidence to link the symptoms Petitioner experienced in December 2021 and March 2022 with her alleged SIRVA injury that began in the fall of 2020. The medical records establish that Petitioner's symptoms had not resolved by late April 2021, almost six months post-vaccination. And it is reasonable to infer Petitioner did not obtain a complete resolution from her April 2021 steroid injections. This supposition is supported by later medical record entries which show her treating physicians continued to characterize her right shoulder adhesive capsulitis as an ongoing problem, and Petitioner continued to experience some pain thereafter. She has also has provided a logical reason why she would be reluctant to pursue treatment during this time – her fear of the COVID vaccine – although in this case the gap is less relevant than the evidence that her pain had not ceased well after vaccination.

The mildness of Petitioner's later symptoms and gap in treatment is highly relevant to damages, and suggests any award in this case for pain and suffering should be modest. But it does *not* mean I cannot find the basic requirement of six months severity met. Accordingly, I find there is preponderant evidence to establish Petitioner suffered the residual effects of her alleged SIRVA for more than six months.

### V. Scheduling Order

In light of my finding regarding the Vaccine Act's severity requirement, Petitioner should file any updated medical records and forward a *reasonable* demand and supporting documentation to Respondent. Respondent should consider his tentative position in this case.

**Respondent shall file a status report indicating how he intends to proceed following my ruling by no later than <u>Tuesday, May 23, 2023</u>. Petitioner shall file a status report updating me on her efforts to convey a demand and supporting documentation to Respondent by no later than <u>Tuesday, May 23, 2023</u>.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master